UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**JADA MARSHALL,**

    **Plaintiff,**

v.　　　　　　　　　　　　　　　　**CIVIL ACTION NO.: 2:25-cv-255**

**ACCOMACK COUNTY DEPARTMENT OF
PUBLIC SAFETY,**

    **Defendant.**

*MEMORANDUM OPINION AND ORDER*

Before the Court is Defendant Accomack County Department of Public Safety's ("Defendant" or "DPS") Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6). ECF No. 3 ("Mot. Dismiss"). Defendant filed a Memorandum in Support of the Motion. ECF No. 4 ("Mem. Supp."). Plaintiff Jada Marshall ("Plaintiff") filed a Response in Opposition. ECF No. 5 ("Resp. Opp'n"). Defendant filed a Reply. ECF No. 6 ("Reply"). The Court has considered the parties' memoranda, and this matter is now ripe for judicial determination. Upon review, the Court finds that a hearing is not necessary. *See* Va. Local Civ. R. 7(J). For the reasons stated herein, Defendant's Motion to Dismiss is **DENIED**.

**I.　FACTUAL AND PROCEDURAL HISTORY**

On August 14, 2023, the Accomack County Department of Public Safety offered employment to Jada Marshall. Compl. ¶ 12. Plaintiff began employment on September 5, 2023. *Id.* ¶ 16. As a condition of her employment, Plaintiff was required to complete Advanced EMT and Firefighter training at the Fire Academy within 12 months of her date of hire. *Id.* ¶¶ 14–15. On October 12, 2023, Plaintiff's Fire Academy instructor, Phillip Kelly ("Instructor Kelly"), sent Plaintiff a text message stating, "I would ask you out if I was not married." *Id.* ¶ 17, Ex. B. When

1

Plaintiff responded that she was "definitely not expecting that," Instructor Kelly texted "[s]orry maybe I should not have said that." *Id.*

Plaintiff reported the perceived harassment to her supervisor, Captain Shawn Malone ("Cpt. Malone"). *Id.* ¶ 21. Plaintiff alleges that, following this report, Cpt. Malone "blamed" and "belittled" her, rather than disciplining Instructor Kelly or reporting her complaint to the County Administrator as required by DPS policy. *Id.* ¶¶ 25–28. Cpt. Malone also told Plaintiff that "she was not mature or mentally fit enough to work for DPS," "she needed therapy" and "she should get her home life straight." *Id.* ¶¶ 29–30. Cpt. Malone also spoke to coworkers about Plaintiff, allegedly saying Plaintiff had engaged in sexual relationships with other co-workers and that Plaintiff should "close her legs and do her job." *Id.* ¶¶ 31–32.

In January 2024, Plaintiff experienced two medical incidents which caused her to miss training shifts. *Id.* ¶¶ 34–36. Cpt. Malone did not allow her to reschedule the missed training shifts, citing a 14-day notice requirement which DPS had not previously enforced on other employees. *Id.* ¶ 37. On February 26, 2024, Plaintiff emailed the DPS Director and the Human Resource ("HR") office to report harassment by Instructor Kelly and Cpt. Malone, as well as to remedy the scheduling issue with her required training shifts. *Id.* ¶ 39. On March 1, 2024, HR sent Plaintiff a letter granting her thirty additional days to complete the required training shifts. *Id.* ¶ 40. Plaintiff subsequently completed all required clinical shifts during the granted extension and submitted documentation to Defendant to verify the completed shifts. *Id.* ¶ 41. However, Plaintiff realized she incorrectly entered a date on the paperwork. *Id.* ¶ 42. Plaintiff attempted to correct the documents, but Defendant did not accept her correction. *Id.* Instead, Defendant informed Plaintiff that she was being terminated, and cited the filing error as the sole reason for her termination. *Id.*

¶¶ 42–43. On March 26, 2024, Plaintiff received a letter from Defendant formalizing her termination. *Id.* ¶ 45.

On April 20, 2025, Plaintiff filed a Complaint against Defendant under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ECF No. 1 ("Complaint"). Plaintiff asserts three Counts against Defendant:

- **Sex-Based Hostile Work Environment in Violation of Title VII of the Civil Rights Act of 1964, as amended, Public Law 88-352, 42 U.S.C. § 2000(e) *et seq.* (*Id.* ¶¶ 49–59);**
- **Sex-Based Discrimination in Violation of Title VII of the Civil Rights Act of 1964, as amended, Public Law 88-352, 42 U.S.C. § 2000(e) *et seq.* (*Id.* ¶¶ 60–66);**
- **Retaliation in Violation of Title VII of the Civil Rights Act of 1964, as amended, Public Law 88-352, 42 U.S.C. § 2000(e) *et seq.* (*Id.* ¶¶ 67–74).**

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of actions that fail to state a claim upon which relief can be granted. Considering a Rule 12(b)(6) motion, courts may only rely upon the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). Courts will favorably construe the allegations of the complainant and assume that the facts alleged in the complaint are true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a court "need not accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc., v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but the complaint must incorporate "enough facts to state a belief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). This plausibility standard does not equate to a probability requirement, but it entails more than a mere possibility that a defendant has acted unlawfully. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 677, and *Twombly*, 550 U.S. at 557). To achieve factual plausibility, plaintiffs must allege more than "naked assertions . . . without some further factual enhancement." *Twombly*, 550 U.S. at 557. Otherwise, the complaint will "stop[ ] short of the line between possibility and plausibility of entitlement to relief." *Id.*

## III. DISCUSSION

Under Rule 12(b)(6), Defendant moves to dismiss Counts One, Two, and Three of the Amended Complaint for failure to state a claim upon which relief can be granted. Def.'s Mem. The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. Thus, the Court will determine whether Plaintiff has stated a claim for relief. For the reasons stated below, Defendant's Motion to Dismiss is granted in part and denied in part.

### A. Count One—Sex-Based Hostile Work Environment in Violation of Title VII of the Civil Rights Act of 1964, as amended, Public Law 88-352, 42 U.S.C. § 2000(e) *et seq.*

Plaintiff's claim in Count One alleges that Defendant created a hostile work environment premised on sex-based discrimination. Compl. ¶¶ 49–59. Specifically, Plaintiff argues she faced sexual harassment and discrimination on account of her sex by both Instructor Kelly and Cpt.

4

Malone, who had the power and authority to prevent her from completing the requirements to become a permanent employee. *Id.* Additionally, Plaintiff alleges that the comments made by these authority figures rise to the level of severity and frequency to create a hostile work environment based on her sex. *Id.*

Title VII prohibits sexual harassment that creates a hostile work environment for the harassed employee. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 276–77 (4th Cir. 2015) (en banc). To make such a claim, Plaintiff must show she was "subjected to (1) unwelcome conduct, (2) based on her sex, that was (3) severe or pervasive enough to make her work environment hostile or abusive and (4) imputable to her employer." *Boyer-Liberto*, 786 F.3d at 277.

To establish the third element of a sex-based hostile environment claim, a plaintiff must show that the work environment was "permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of [their] employment and create an abusive working environment.'" *Harris*, 510 U.S. at 21 (internal citation omitted). The plaintiff must show that she subjectively felt that the work environment was hostile or abusive and that the work environment was objectively hostile or abusive to a reasonable person. *Id.* at 22. There is no "mathematically precise test" for determining if an environment is objectively hostile or abusive. *Id.* To determine the severity of a hostile work environment, courts look at the totality of the circumstances, which include: (1) the "frequency of the discriminatory conduct"; (2) "its severity"; (3) "whether it is physically threatening or humiliating, or a mere offensive utterance"; and (4) "whether it unreasonably interferes with an employee's work performance." *Id.* at 23.

Defendant challenges the third element, arguing the alleged conduct does not rise to the level of frequency and severity to constitute a hostile work environment. Mem. Supp. at 3.

Defendant argues Plaintiff's factual allegations consist only of isolated incidents and offhand comments, which are insufficient to meet the demanding standard a hostile work environment claim requires. *Id.* at 4.

Plaintiff alleges that Instructor Kelly, who was responsible for determining her performance and ultimately whether she would complete the necessary training for her job, told her he would "ask [her] out if [he] was not married." Compl. ¶¶ 17–18. Further, Plaintiff alleges that when she reported this perceived harassment to Cpt. Malone, her supervisor, he told Plaintiff she had "brought [Instructor Kelly's harassment] on herself," "stop worrying about men and do [her] job," "get her home life straight," and that Plaintiff needed therapy. *Id.* ¶¶ 22, 23, 30. Cpt. Malone then proceeded to spread untrue rumors around the workplace about Plaintiff's sexual relationships with other co-workers, commenting that Plaintiff needed to "close her legs and do her job." *Id.* ¶ 32.

That Kelly made implicit, rather than explicit sexual suggestions, does not diminish the severity of his conduct. *See Twine v. AT&T, Inc.*, 755 F. Supp. 3d 959, 978 (E.D. Va. 2024) (citing *Fairbrook Med. Clinic*, 609 F.3d 320, 330 (2010)). Instructor Kelly's implicit proposition, in addition to Cpt. Malone's disparaging comments about Plaintiff "keeping her legs closed," indicate inappropriate sexual discussion by Plaintiff's superiors in her workplace. And, although a hostile workplace claim must meet a demanding standard, courts in this district have found that sexual harassment by one's supervisor is more likely to meet that standard because of the influence the supervisor may have on the workplace and in light of the inherent power imbalance. *Twine*, 755 F. Supp. 3d at 978 ("Because a victim's employment is contingent upon remaining in good standing with her supervisor, harassment by that same supervisor puts her in a bind. If she resists her supervisor's demands and reports him, she may damage her career. Her other option—

acquiescing to unwanted sexual contact—is an unconscionable alternative. In these cases, courts are far more willing to find that the harassment was severe and pervasive."). Instructor Kelly was responsible for determining whether Plaintiff passed or failed the required course for her employment. As alleged, his proposition could plausibly have situated Plaintiff in a position to feel pressured to submit to his request because he was her course instructor or otherwise risk her employment.

Additionally, Cpt. Malone's distasteful comments went beyond "general crudity," and veered into "highly personalized comments designed to demean and humiliate [Plaintiff]." *EEOC v. Fairbook Med. Clinic, P.A.*, 609 F.3d 320, 328 (4th Cir. 2010) (finding an employee's supervisors "series of sexually graphic and unmistakably personal remarks . . . made her work environment intensely uncomfortable."); *see also Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 304 (4th Cir. 2019) (determining management contributing to the spread of false rumors about an employee having sexual relationship with another supervisor "altered the conditions of her employment and created an abusive atmosphere."). Here, Plaintiff was subjected to endure the effects of highly personal rumors about purported sexual relationships in the workplace instigated by her supervisor, propositions from her course instructor, and demeaning comments made by her manager, blaming Plaintiff for her instructor's inappropriate conduct after she reported him. Although Instructor Kelly made only one sexually suggestive proposition to Plaintiff, Cpt. Malone engaged in a campaign of public remarks "intended to humiliate [Plaintiff] on the basis of gender." *Fairbrook*, 609 F.3d at 330. When reviewed in totality, Plaintiff's workplace circumstances establish conditions sufficient for a sex-based hostile workplace claim to survive at this stage.

Accordingly, the Defendant's Motion to Dismiss on this Count is denied.

### B. Count Two—Sex-Based Discrimination in Violation of Title VII of the Civil Rights Act of 1964, as amended, Public Law 88-352, 42 U.S.C. § 2000(e) *et seq*.

Regarding her sex discrimination claim, Plaintiff alleges that she was terminated because Defendant unlawfully discriminated against her based on sex. Compl. ¶¶ 49–59; Resp. Opp'n at 7.

Title VII prohibits an employer from "discharg[ing] any individual, or otherwise . . . discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex[.]" 42 U.S.C. § 2000e-2(a)(1). A Title VII plaintiff need not plead facts that constitute a prima facie case to survive a motion to dismiss. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)). At the pleading stage, a plaintiff need only plausibly allege facts sufficient to raise an inference of unlawful discrimination and satisfy the elements of the claim above the speculative level. *Swierkiewicz*, 534 U.S. at 510.

"Without direct evidence of sex discrimination, [a plaintiff] must show that (1) she is a member of a protected class, (2) she suffered adverse employment action, (3) her performance met her employer's legitimate expectations at the time of the adverse employment action, and (4) the action occurred under circumstances permitting a reasonable inference of sex discrimination." *Boney v. Trs. of Cape Fear Cmty. Coll.*, 366 F. Supp. 3d 756, 764 (E.D.N.C. 2019). The plaintiff must also plausibly allege that the motive to discriminate based on sex was at least one of the employer's motives. *Id.*

Defendant challenges Plaintiff's ability to satisfy the third and fourth elements of her sex discrimination claim. Mem. Supp. at 6, 7; Reply at 6. Specifically, Defendant argues Plaintiff's allegations do not demonstrate that sex was a motivating factor for her termination. Mem. Supp. at 6. Additionally, Defendant argues Plaintiff's allegations demonstrate that her job performance

was not satisfactory. *Id.* at 7. Finally, Defendant moves the Court to dismiss Plaintiff's sex discrimination claim because she has not pled facts to show an inference of unlawful discrimination. Reply at 7.

Plaintiff has plausibly alleged that she was meeting Defendant's legitimate expectations at the time of the adverse employment action. Compl. ¶¶ 45–46. The Complaint asserts that the only basis upon which Plaintiff was terminated was a clerical error in paperwork, despite having otherwise performed satisfactorily and completed all required training. *Id.* The Court finds that Plaintiff has sufficiently alleged that she met the legitimate expectation of her employer, satisfying the third prong of the sex discrimination claim.

Additionally, the Court finds Plaintiff has sufficiently shown an inference of unlawful discrimination based on sex motivated her termination. As alleged, Instructor Kelly's inappropriate proposition and Cpt. Malone's comments to and about Plaintiff appear to originate from bias against her sex. The allegations plausibly suggest Plaintiff was treated unfairly at work based on her sex, and that those biases ultimately contributed to her termination. Because Plaintiff asserts that a clerical error was the sole reason for her termination, the Court finds it plausible that sex discrimination was the true reason for this adverse employment action. As such, Plaintiff has met her burden at this stage in alleging a causal nexus between the sex discrimination and the adverse action Defendant took against her.

Accordingly, Defendant's Motion to Dismiss on Count II is denied.

### C. Count Three—Retaliation in Violation of Title VII of the Civil Rights Act of 1964, as amended, Public Law 88-352, 42 U.S.C. § 2000(e) *et seq.*

Finally, Plaintiff alleges she has suffered losses because Defendant retaliated against her by taking an adverse employment action after she engaged in protected activity. Compl. ¶¶ 67–74.

A plaintiff can assert a Title VII retaliation claim under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 92 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). To prove retaliation under the *McDonnell Douglas* framework, a plaintiff must first establish a prime facie case showing "(1) that she engaged in a protected activity, (2) that her employer took an adverse action against her, and (3) that there was a causal link between the two events." *Laurent-Workman v. Wormuth*, 54 F.4th 201, 212 (4th Cir. 2022). Then, the burden shifts to the employer to establish a legitimate, non-discriminatory reason for its actions. *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015). If the employer meets its burden, then the burden shifts back to the employee to "rebut the employer's evidence by demonstrating that the employer's purported nonretaliatory reasons 'were not its true reasons but were a pretext for discrimination.'" *Id.* (internal citation omitted).

Plaintiff engaged in two protected activities: reporting Instructor Kelly's conduct to Cpt. Malone and reporting Cpt. Malone's comments to Human Resources on February 26, 2024. Compl. ¶¶ 21, 39. Plaintiff also endured an adverse employment action when she was terminated on March 26, 2024. *Id.* ¶ 44. Defendant challenges Plaintiff's ability to satisfy the third element of the claim, namely that intervening events—Plaintiff erroneously entering a date on a clinical form—severed any possible causation established by the temporal proximity of the protected activity and the adverse employment action. Mem. Supp. at 8–9.

"Establishing a causal relationship at the prima facie stage is not an onerous burden." *Strothers v. City of Laurel, Maryland*, 895 F.3d 317, 335 (4th Cir. 2018); *see also Foster v. Univ. of Maryland-Eastern Shore*, 787 F.3d 243, 251 (holding that plaintiff need not establish but-for causation until pretext stage of burden-shifting framework). Causation can be established by temporal proximity, and Plaintiff alleges such causation has been established here, given the

termination occurred a month after her February report. *Webb v. K.R. Drenth Trucking, Inc.*, 780 F. Supp. 2d 409, 413 (W.D.N.C. 2011) ("[A] plaintiff may present evidence of close temporal proximity between the protected activity and the adverse employment action, or a pattern of conduct.").

The Court finds that Defendant's intervening act argument is premature at the motion to dismiss stage. At this stage, Plaintiff need only show that "the employer was aware she engaged in protected activity and the employer took adverse action against her after becoming aware of such activity." *Sunkins v. Hampton Roads Connector Partners*, 701 F. Supp. 3d 342, 359 (E.D. Va. 2023). Defendant was aware of Plaintiff's discrimination complaint and terminated Plaintiff a month later. Compl. ¶¶ 39–40. Plaintiff also asserts Cpt. Malone exhibited retaliatory animus against her after her first report of Instructor Kelly's proposition by circulating untrue rumors of a sexual nature and refusing to allow Plaintiff to reschedule two shifts she missed as a result of medical incidents. *Id.* ¶¶ 21–23, 28–32, 34–38. Under Plaintiff's theory, Cpt. Malone first denied Plaintiff the opportunity to complete the necessary training for her employment because Plaintiff reported being the target of inappropriate conduct. *Id.* ¶ 71. The Human Resources Department subsequently granted Plaintiff an extension to complete the missed clinical shifts. *Id.* ¶ 40. Then, Plaintiff avers Defendant proceeded to terminate her on the sole basis of a clerical error, sustained while completing the shifts Plaintiff was unfairly denied previously, even though she completed the training required for the position. *Id.* ¶¶ 45–46.

Defendant will be permitted, at a later stage of litigation, to provide a legitimate, non-retaliatory reason for its termination. However, at this stage, Plaintiff has satisfied her burden and plausibly alleged a causal link between the protected activity and adverse action. *Parker*, 915 F.3d at 297 (finding a causal link where employee complained to Human Resources about her

supervisor circulating a rumor about her, to no avail, and then began receiving performance-based warnings within a month).

Accordingly, the Court finds Plaintiff has sufficiently alleged a retaliation claim and denies Defendant's Motion on Count III.

## IV. CONCLUSION

For the foregoing reasons, the Defendant's Motion to Dismiss is **DENIED**. ECF No. 3.

The Court **DIRECTS** the Clerk to provide a copy of this Memorandum Opinion and Order to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
January 21, 2026

Raymond A. Jackson
United States District Judge